[Cite as *State ex rel. Hedges v. Indus. Comm. of Ohio*, 2015-Ohio-4681.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Paul C. Hedges, | : | |
| Relator, | : | |
| v. | : | No. 15AP-49 |
| Industrial Commission of Ohio and Sterling Paper Co., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

D E C I S I O N

Rendered on November 12, 2015

*The Bainbridge Firm, LLC, Andrew J. Bainbridge, Christopher J. Yeager, Carol L. Herdman,* and *Zachary L. Tidaback,* for relator.

*Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

LUPER SCHUSTER, J.

{¶ 1} Relator Paul C. Hedges has filed an original action requesting this court issue a writ of mandamus ordering respondent Industrial Commission to vacate the order denying his application for permanent total disability, and to find he is entitled to compensation.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the appended decision, including findings of fact and conclusions of law, recommending this court deny relator's request for a writ of mandamus. No objections have been filed to that decision.

{¶ 3}   Finding no error of law or other defect on the face of the magistrate's decision, this court adopts the magistrate's decision as our own, including the findings of fact and conclusions of law.   In accordance with the magistrate's decision, we deny relator's requested writ of mandamus.

*Writ of mandamus denied.*

SADLER and HORTON, JJ., concur.

———————————————

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State of Ohio ex rel. Paul C. Hedges, | : | |
| Relator, | : | |
| v. | : | No.  15AP-49 |
| Industrial Commission of Ohio and Sterling Paper Co., | : | (REGULAR CALENDAR) |
| | : | |
| Respondents. | : | |
| | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on August 18, 2015

*The Bainbridge Firm, LLC, Andrew J. Bainbridge, Christopher J. Yeager, Carol L. Herdman* and *Zachary L. Tidaback,* for relator.

*Michael DeWine*, Attorney General, and *Natalie J. Tackett,* for respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 4}   Relator, Paul C. Hedges, has filed this original action requesting this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order which denies his application for permanent total disability ("PTD") compensation, and ordering the commission to find he is entitled to that compensation.

Findings of Fact:

{¶ 5}   1. Relator has sustained two work-related injuries during the course of his employment and his workers' compensation claims have been allowed for the following conditions:

Claim #08-876664: Subdural hemorrhage without coma; left supraspinatus tear; left rotator cuff tear; substantial aggravation of pre-existing acromioclavicular osteoarthritis, left; left bicipital tenosynovitis; substantial aggravation of pre-existing subacromial impingement, left; left biceps tendon tear.

Claim #11-846273: Bilateral quadriceps rupture; abrasion right upper arm; right rotator cuff tendonitis; dysthymic disorder; generalized anxiety disorder; substantial aggravation of pre-existing right subacromial impingement; substantial aggravation of pre-existing right rotator cuff partial tear.

{¶ 6}   2. Relator has undergone four surgeries related to the allowed conditions in his two claims.

{¶ 7}   3. On March 14, 2014, relator filed his application for PTD compensation. At the time, he was 62 years of age, indicated that he had graduated from high school, and had attended approximately one year of vocational training for electronics. Relator further indicated he could read, write, and perform basic math, noted he had applied for Social Security Disability benefits, and had not participated in vocational rehabilitation.

{¶ 8}   4. Relator's application was supported by the March 2, 2014 report of Charles J. Kistler, D.O., who examined relator on February 27, 2014, and concluded that he was permanently and totally disabled, stating:

It is my medical opinion, based on the history given to me and my examination of this patient that these injuries were sustained while in the course of his employment in the above two claims. It is further my opinion, taking into account only those conditions allowed in these claims and with reference to the AMA Guidelines to the Evaluation of Permanent Impairment, Sixth Edition, that Paul Hedges is permanently and totally impaired from sustained remunerative employment solely as a result of the injuries suffered in these two claims.

{¶ 9}   5. Donald J. Tosi, Ph.D., examined relator for his allowed psychological conditions. In his May 1, 2014 report, Dr. Tosi concluded relator had a mild impairment due to his allowed psychological conditions, determined he had a 12 percent whole person impairment, and concluded relator would be able to work as follows:

> The Injured Worker is able to work in a normal stress environment. Work tasks should be moderate in complexity. He has no clinically significant mental limitations resulting from the allowed psychological conditions.

{¶ 10} 6. James J. Sardo, M.D., examined relator for his allowed physical conditions. In his April 28, 2014 report, Dr. Sardo identified the allowed conditions in relator's claims, discussed his symptoms, provided his physical findings upon examination, and concluded relator would be able to perform some sustained remunerative employment. Specifically, in the discussion portion of his report, Dr. Sardo stated:

> The injured worker has significant restriction of both shoulders. On the left side, he is status post subacromial decompression, acromioplasty, debridement of the left shoulder biceps tendon, and rotator cuff repair which occurred on 06/12/2009. On 07/18/2012, he underwent a right shoulder subacromial decompression, distal clavicle excision, and rotator cuff debridement. He has completed postoperative therapy and is now independent with a home exercise program. He is status post bilateral quadriceps tendon repair on 09/15/2011. He is currently ambulatory without an assistive device. He does have significant restriction of his bilateral knee range of motion. Regarding the subdural hemorrhage without coma, he appears to have a very mild memory deficit; however, there is no significant impact on his activities of daily living. It appears he has reached maximum medical improvement with regards to the allowed conditions in these two claims. He has undergone appropriate conservative and surgical care. He does have significant physical limitations due to decreased range of motion at both shoulders and both knees. *He would be able to perform job duties at a sedentary level including exerting up to 10 pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. He would be able to walk or stand for brief periods of time. He would not be able to perform any overhead activities with both upper extremities.*

(Emphasis added.)

{¶ 11} Ultimately, Dr. Sardo concluded relator had a 9 percent whole person impairment for the 2008 claim and an 18 percent whole person impairment for the 2011

claim, which equaled a 25 percent whole person impairment. Dr. Sardo concluded relator could perform some sedentary work with the further limitation of "[n]o reaching overhead with either upper extremity."

{¶ 12} 7. Relator's application for PTD compensation was heard before a staff hearing officer ("SHO") on October 21, 2014. The SHO relied upon the reports of Drs. Tosi and Sardo and concluded relator was capable of performing some sustained remunerative employment, but would be unable to perform any overhead activities with both upper extremities. Thereafter, the SHO discussed relator's non-disability factors and concluded that his age was a neutral vocational factor, and his high school education and prior work history were positive vocational factors.

{¶ 13} 8. Relator filed a request for reconsideration arguing that Dr. Sardo's report did not constitute some evidence that relator was capable of performing sedentary work activity because Dr. Sardo's restriction of no reaching overhead with both upper extremities limited relator to less than sedentary employment and rendered his report so internally inconsistent that it could not constitute some evidence supporting the commission's decision. Relator cited *State ex rel. Lopez v. Indus. Comm.*, 69 Ohio St.3d 445 (1994), which held that a medical report that concludes a claimant is capable of one level of work, but then restricts the claimant to work that is something less than the meaning of that level of work, does not constitute some evidence to support the denial of an award of PTD compensation.

{¶ 14} 9. In an order mailed December 10, 2014, the commission failed to reach a majority vote when one commissioner recused himself, one voted to grant the request for reconsideration, and one voted to deny the request for reconsideration. As such, the SHO's order denying relator's application for PTD compensation remained a final order of the commission.

{¶ 15} 10. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law:

{¶ 16} Relator's entire argument focuses on his contention that Dr. Sardo's report does not support the commission's conclusion that he can perform at a sedentary work level. According to relator, Dr. Sardo's limitation that he cannot perform any overhead

activity with both upper extremities limits him to less than sedentary work and essentially makes it impossible for him to be employed.

{¶ 17} For the reasons that follow, it is this magistrate's decision that this court should deny relator's request for a writ of mandamus.

{¶ 18} The Supreme Court of Ohio has set forth three requirements which must be met in establishing a right to a writ of mandamus: (1) that relator has a clear legal right to the relief prayed for; (2) that respondent is under a clear legal duty to perform the act requested; and (3) that relator has no plain and adequate remedy in the ordinary course of the law. *State ex rel. Berger v. McMonagle*, 6 Ohio St.3d 28 (1983).

{¶ 19} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order which is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76 (1986). On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.*, 29 Ohio St.3d 56 (1987). Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.*, 68 Ohio St.2d 165 (1981).

{¶ 20}   The relevant inquiry in a determination of permanent total disability is claimant's ability to do any sustained remunerative employment. *State ex rel. Domjancic v. Indus. Comm.*, 69 Ohio St.3d 693 (1994). Generally, in making this determination, the commission must consider not only medical impairments but also the claimant's age, education, work record and other relevant non-medical factors. *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167 (1987). Thus, a claimant's medical capacity to work is not dispositive if the claimant's non-medical factors foreclose employability. *State ex rel. Gay v. Mihm*, 68 Ohio St.3d 315 (1994). The commission must also specify in its order what evidence has been relied upon and

briefly explain the reasoning for its decision. *State ex rel. Noll v. Indus. Comm.*, 57 Ohio St.3d 203 (1991).

{¶ 21} As noted in the findings of fact, the commission concluded that relator was capable of performing at a sedentary work level. Ohio Adm.Code 4121-3-34(B)(2)(a), defines the upper limits of sedentary work as follows:

> "Sedentary work" means exerting up to ten pounds of force occasionally (occasionally: activity or condition exists up to one-third of the time) and/or a negligible amount of force frequently (frequently: activity or condition exists from one-third to two-thirds of the time) to lift, carry, push, pull, or otherwise move objects. Sedentary work involves sitting most of the time, but may involve walking or standing for brief periods of time. Jobs are sedentary if walking and standing are required only occasionally and all other sedentary criteria are met.

{¶ 22} When reading the above definition for sedentary work, it must be remembered that a job is classified as "sedentary" provided that the job does not require a person to lift more than ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects. Not all sedentary jobs require a person to lift ten pounds of force occasionally; however, a job cannot be classified as sedentary if it requires one to exert more than ten pounds of force occasionally.

{¶ 23} In support of his argument, relator draws this court's attention to two cases: *Lopez and State ex rel. Libecap v. Indus Comm.*, 83 Ohio St.3d 178 (1998).

{¶ 24} In *Lopez,* the commission denied Valentin Lopez's application for PTD compensation after relying on the report of Dr. Gary I. Katz. In mandamus, Lopez challenged the commission's reliance on the report of Dr. Katz arguing that it was equivocal. Ultimately, the Supreme Court of Ohio concluded that, while Dr. Katz's report was not equivocal, it was so internally inconsistent that it could not constitute some evidence to support the commission's decision to deny Lopez's application for PTD compensation. Specifically, the court stated:

> Katz's report, however, while unequivocal, is so internally inconsistent that it cannot be "some evidence" supporting the commission's decision. Despite "normal" physical

findings, Katz assessed a high (fifty percent) degree of impairment. He then, however, concluded that claimant could perform heavy foundry labor. Being unable to **532 reconcile these seeming contradictions, we find that the report is not "some evidence" on which to predicate a denial of permanent total disability compensation.

*Id.* at 449.

{¶ 25} In *Libecap,* Betty J. Libecap's claim was allowed for both physical and psychological conditions.  The commission based its decision to deny her application for PTD compensation on the medical reports of William G. Littlefield, M.D., and psychologist Giovanni M. Bonds, Ph.D.  Dr. Littlefield examined Libecap for her allowed physical conditions and found a 41 percent impairment based upon the allowed orthopedic condition.  In his report, he stated:

Dr. Littlefield found a 41 percent impairment rating of the whole person based upon the allowed orthopedic condition. He reported:

" * * * The medical and functional limitations are that the claimant would have difficulty in occupations requiring bending and lifting objects from below the level of the knee or any of them involving extreme rotation of the spine or performing over head activities. She would not be able to lift more than 5 or 10 pounds and would have difficulty in any occupation that would involve sitting or standing for more than 30 minutes. Frequent breaks and allowing the claimant to change positions would be required. Repetitive activities would not be tolerated in the upper extremities." (Emphasis added.)

*Id.* at 2.

{¶ 26} The Supreme Court of Ohio agreed with relator and stated:

We do not view Dr. Littlefield's limitations as consistent with sedentary work as defined in the Ohio Administrative Code or with the general definition of "sedentary work" utilized before Ohio Adm.Code 4121-3-34(B)(2)(a) became effective.

*Id.* at 2.

{¶ 27} In the present case, the commission relied on the report of Dr. Sardo who opined that relator could perform at a sedentary work level, but was precluded from performing any overhead work. To the extent that relator seems to assert that Dr. Sardo's opinion that he cannot perform overhead work with either upper extremity equates with an inability to use his arms and hands below shoulder level to perform work activities, such a conclusion would require that the court read Dr. Sardo's report out of context. Nothing in Dr. Sardo's report limits relator's use of his upper extremities in any manner other than performing overhead work.

{¶ 28} Comparing relator's case with the *Libecap* case, the magistrate specifically notes that Dr. Littlefield had restricted Libecap indicating that she would not be able to lift more than five or ten pounds and would have difficultly in any occupation that would involve "*sitting or standing for more than 30 minutes. Frequent breaks and allowing the claimant to change positions would be required. Repetitive activities would not be tolerated in the upper extremities.*" (Emphasis added.) *Id.* at 2. First, according to the definition of sedentary work found in the Ohio Administrative Code, sedentary work specifically involves sitting most of the time. Inasmuch as Dr. Littlefield opined that Libecap could not sit for more than 30 minutes, that restriction alone did not comport with the definition of sedentary work. To the extent that Dr. Littlefield indicated that Libecap could not perform repetitive activities with her upper extremities, as the magistrate noted above, repetitive activities with one's upper extremities would include activities that were between the waist and the shoulders. Many sedentary jobs involve repetitive activities with one's arms, including certain secretarial or administrative jobs, as well as assembly line work, while none of those jobs would necessarily involve any overhead activities. As such, the *Libecap* decision is distinguishable from relator's case.

{¶ 29} Likewise, in *Lopez*, Dr. Katz had made normal physical findings, but assessed a high degree of impairment, and then concluded that Lopez could perform heavy boundary labor. Because the court was unable to reconcile the seeming contradictions, the court found that Dr. Katz's report did not constitute some evidence that Lopez was not permanently and totally disabled.

{¶ 30} Here, Dr. Sardo's report does not suffer from contradictions as did the report of Dr. Katz. Dr. Sardo indicated that relator could exert up to ten pounds of force

occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects; would be able to walk or stand for brief periods of time, but would not be able to perform any overhead activities with both upper extremities. An ability to exert up to ten pounds of force occasionally and/or a negligible amount of force frequently to lift, carry, push, pull, or otherwise move objects falls squarely within the definition of sedentary employment. Further, the limitation of only being able to walk or stand for brief periods of time also falls squarely within the definition of sedentary work where jobs are sedentary if they require sitting most of the time. Further, as noted previously, an inability to perform overhead work does not remove an injured worker from being able to perform many sedentary jobs.

{¶ 31} Finding that the report of Dr. Sardo does constitute some evidence upon which the commission could and did rely, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion when it denied his application for PTD compensation, and this court should deny relator's request for a writ of mandamus.


/S/ MAGISTRATE
STEPHANIE BISCA


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b)